IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY SERETTI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-1227 |
| | ) | |
| v. | ) | |
| | ) | Chief Magistrate Judge Lenihan |
| MORROW FORD LINCOLN | ) | |
| MERCURY, INC., | ) | |
| | ) | Re: ECF No. 23 |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Presently before the Court is Defendant Morrow Ford Lincoln Mercury, Inc.'s ("Defendant" or "Company") Motion for Summary Judgment at ECF No.23. Because the record reflects disputed issues of material fact, Defendant's motion will be denied.

FACTS[1]

On January 19, 2009, Defendant's Vice President of Sales & Marketing, Steve Peterson ("Peterson"), told 58 year old General Manager, Plaintiff Harry Seretti ("Plaintiff") that the Company would be making a change and terminated Plaintiff's employment. According to Plaintiff, he asked Peterson the reason for his termination, and Peterson responded that Plaintiff's age had caught up with him. Peterson testified that he does not deny making this statement, only that he cannot recall making it. During his conversation with Plaintiff when discharging him, Peterson only remembers telling Plaintiff that he was no longer going to be working with the Company. Peterson does not remember giving Plaintiff a reason for his discharge. Plaintiff was immediately replaced with Van Keith Edwards ("Edwards"), a 45 year old former employee.

---

[1] [1] The facts are taken from the parties' Statements of Material Facts, responses thereto, and accompanying appendices at ECF Nos. 25, 26, 35, 36, 34, & 41, and are undisputed unless otherwise indicated.

According to Plaintiff, Peterson began making ageist comments to Plaintiff during the last quarter of 2008. Specifically, Plaintiff contends that between October 2008 and January 2009, Peterson told Plaintiff that he was getting too old for his job on approximately four occasions, and that the automobile business has a way of aging someone "real quick." Peterson testified that he does not deny making these statements, only that he cannot recall making them. Peterson admits, however, that he asked Plaintiff more than once if he still had passion for the job. Plaintiff also testified that, in a scolding manner, Peterson would comment that Plaintiff couldn't "keep a grip" on things as he got older, referring to controlling the sales staff and the young people responsible for plowing snow and cleaning off cars. Plaintiff testified that Peterson also stated that "maybe you got too old for what you're doing," and "these 12-hour days can really age you."

The parties agree that Plaintiff has worked in the automobile industry for nearly 30 years. Before Peterson fired Plaintiff, Plaintiff had never been fired before or asked to resign. Peterson hired Plaintiff to work for the Ron Lewis Automotive Group, Inc. ("Lewis Automotive Group"), in August 2006. Ron Lewis is the President of the Lewis Automotive Group. The Lewis Automotive Group owns five local automobile retail stores: Morrow Ford Lincoln Mercury in Beaver Falls, Morrow Chevrolet Kia in Beaver Falls; Waynesburg Dodge Chrysler Jeep; Pleasant Hills Chrysler; and Cranberry Chrysler Dodge. Plaintiff was initially hired as sales manager of Morrow Ford Lincoln Mercury ("Morrow Ford"). According to Peterson, Plaintiff did a good job as the Sales Manager in 2006 at Morrow Ford. Later in 2007, Plaintiff was promoted to the Ellwood City dealership as General Manager. Thereafter, Plaintiff left Defendant for a time and then returned in February 2008 when Peterson contacted him about a

job. Plaintiff returned as General Manager of Morrow Ford. Edwards had left that position in November 2007.

The parties also agree that in 2008, the automobile business began to collapse, and November 2008 was the height of that collapse. The car industry had the worst year in recent history starting in late 2008 through 2009 and into 2010. In 2008, the Lewis Automotive Group's sales volume declined 15% compared to 2007. Morrow Ford's profits decreased by 33% and sales decreased by 43%. The parties dispute that one of the reasons why the Lewis Automotive Group's sales volume declined by only 15% was because the Lewis Automotive Group added a new dealership that was very high performing.

Around July 2008, Peterson lowered the remuneration guaranteed to Plaintiff on a monthly basis regardless of the number of cars sold, and raised Plaintiff's commission per car sold. Defendant indicates that this was done to motivate Plaintiff to increase his automobile sales. Plaintiff indicates that he was told that this change in compensation structure was necessary because the entire automobile industry was hurting, and Defendant could not afford to pay him more at that time. Plaintiff asserts that neither Peterson nor Lewis told him that the new pay plan was instituted as incentive to work harder because Plaintiff failed to meet their expectations. In fact, the parties agree that Lewis stopped into the Ford dealership only occasionally, and spoke to Plaintiff only generally about the dealership's performance.

Similarly, in November 2008, Plaintiff was also instructed that all sales had to be approved through Bob Riddle at the Morrow Kia Chevy store across the street. At the same time, Plaintiff was also to receive commissions on sales at both dealerships.

3

Finally, Lewis testified that although he "probably had ongoing conversations [with Peterson] because of [Plaintiff's] performance," he can recall no specific conversations regarding Plaintiff's performance and termination from the Company.

On September 17, 2010, Plaintiff filed the above-captioned two-count Complaint and alleges that his termination from Morrow Ford constituted unlawful intentional age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. Ann. § 955(a) *et seq.*.[2]

LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof. *Id*. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.

---

[2] The Court will address Plaintiff's ADEA and PHRA claims collectively because the same legal standard applies to both. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005) (citing *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004)).

*Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

Here, Defendant contends that it is entitled to judgment as a matter of law because Plaintiff cannot establish that his age was the "but for" cause of his termination. Plaintiff responds that genuine issues of material fact preclude summary judgment because a reasonable jury could conclude that Peterson directly addressed his motivation at the time of Plaintiff's termination when he told Plaintiff that his age had caught up with him.

ANALYSIS

The ADEA makes it unlawful for an employer to discharge an employee "because of such individual's age." 29 U.S.C. § 623(a). In *Gross v. FBL Financial Servs., Inc.*, 129 S. Ct. 2343 (2009), the United States Supreme Court held that "to establish a disparate treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but for' cause of the employer's adverse decision." *Id.* at 2350. There is no "heightened evidentiary requirement" for plaintiffs to satisfy their burden of persuasion through "direct evidence" as

5

opposed to "circumstantial evidence." *Id.* at 2351 n.4. Therefore, "[a]plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but for' cause of the challenged employer decision." *Id.* at 2351. The *Gross* Court made clear that, in direct evidence cases, the burden shifting framework established in *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989) for cases under Title VII does not apply to ADEA claims.[3] In addition, direct evidence of age discrimination at the summary judgment stage removes the case from the *McDonnell Douglas* burden shifting paradigm because the plaintiff no longer needs the inference of discrimination that arises from the prima facie case.[4] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.")); *see also Fakete v. Aetna, Inc.,* 308 F.3d 335, 338-39 (3d Cir. 2002) (where direct evidence of discrimination presented, court "need not consider whether that claim may proceed under a *McDonnell Douglas* theory."). *Cf. United States Postal Serv. Bd. v. Aikens*, 460 U.S. 711, 715 (1983) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-55 (1981)) (After a prima facie case is established and the defendant offers evidence for its challenged action against the plaintiff, the "*McDonnell-Burdine* presumption 'drops from the case,'" and the factual inquiry focuses on whether defendant intentionally discriminated against the plaintiff.)[5]

---

[3] Prior to *Gross*, ADEA and Title VII claims were analyzed in the same way; in cases where plaintiffs presented direct evidence of discrimination, the burden shifted to employers to present evidence that they would have made the same employment decision in the absence of discrimination. *See Fakete v. Aetna, Inc.*, 308 F.3d 335 (3d Cir. 2002) (applying *Price Waterhouse* test to ADEA case where direct evidence of discrimination presented).

[4] The United States Court of Appeals for the Third Circuit has held, however, that age discrimination claims based on circumstantial evidence continue to be analyzed under *McDonnell Douglas*. *Smith v. City of Allentown*, 589 F.3d 684, 690-91 (3d Cir. 2009).

[5] At trial, "the plaintiff may prove his case by direct or circumstantial evidence. The trier of fact should consider all the evidence, giving it whatever weight and credence it deserves." *United States Postal Serv. Bd. v. Aikens*, 460 U.S. 711, 714 n.3 (1983).

The United States Court of Appeals for the Third Circuit has defined "direct evidence" as evidence "sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on the plaintiff's age in reaching their decision." *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004).[6] "Such evidence 'leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it' when he made the challenged employment decision." *Fakete*, 308 F.3d at 338-39 (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir. 1995)).

Here, Plaintiff contends that he has set forth a direct case of age discrimination and that the record reflects a disputed issue of material fact as to whether Plaintiff has supported his ADEA claim with direct evidence. Plaintiff points to his testimony that Peterson indicated to him on the day of his termination that Plaintiff's age had finally caught up with him.

The United States Court of Appeals for the Third Circuit has instructed that certain considerations are probative of discrimination when biased remarks are reflected in the record. These considerations include "the speaker's position in the organization, the content and purpose of the statement, and the 'temporal connection between the statement and the challenged employment action.'" *Hodczak v. Latrobe Specialty Steel Co.*, No. 11-1085, 2011 WL 5592881, at *2 (3d Cir. Nov. 17, 2011) (quoting *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997)). First, biased remarks made by individuals within the chain of decisionmakers who have the authority to discharge, are far more probative of discrimination than those made by individuals outside the chain of decisionmakers. *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 521 (3d Cir. 1997) (citations omitted). In addition, if the substance and purpose of the

---

[6] In light of the United States Supreme Court's decision in *Gross*, it is likely that the court of appeals' definition of direct evidence in ADEA cases will change to reflect the new "but for" causation standard articulated in *Gross*. *See Gross,* 129 S. Ct. at 2350 (an employer is liable under the ADEA as long as the adverse action would not have occurred "but for" the plaintiff's age).

7

biased remark concern the challenged employment action, the statement will be far more probative of discrimination than if the remark is completely unrelated to the challenged action. *See Hodczak*, 2011 WL 5592881, at *2 (remarks completely unrelated to challenged employer action); *Kodish v. Oakbrook Terrace Fire Protection Dist.,* 604 F.3d 490, 501 (7th Cir. 2010) (Direct proof can be "near admissions by the employer that its decisions were based on a proscribed criterion (e.g., 'You're too old to work here.')."). Finally, a close temporal connection between the remark and the challenged employment action will be far more probative of discrimination than a remark made months before the challenged action.

Here, a reasonable jury could conclude from this record, including all reasonable inferences drawn therefrom, that Peterson's remark to Plaintiff on the day of his termination is direct evidence of age based discrimination. Further, a reasonable jury could conclude that this age discrimination was the "but for" cause of Plaintiff's termination.

First, Peterson's statement that Plaintiff's age had caught up with him directly reflects Peterson's opinion that Plaintiff was "old" and that he could no longer do his job because he was old. Therefore, the statement could be construed by a reasonable jury as directly reflecting an illegal basis for Plaintiff's termination. Further, the purpose of the statement is demonstrated by the fact that it was uttered in response to Plaintiff's inquiry as to why he was being terminated. That is, a reasonable jury could conclude that Peterson made the statement for the very purpose of providing Plaintiff with the reason for his termination.

In addition, the fact that Peterson made the statement contemporaneously with the challenged employment decision is highly probative of discriminatory intent.

Finally, Defendant admits that Peterson was in fact a decisionmaker. That is, Peterson testified that the Company adheres to an unwritten policy known as "two to hire, two to fire,"

where two individuals are involved in decisions to hire and fire so as "not to make an irrational decision." Here, according to Peterson, he and Lewis were the "two" involved in the decision making concerning Plaintiff. The record reflects only that Lewis "probably" had discussions with Peterson about Plaintiff's performance, and those conversations "probably" started 90 days before Plaintiff's discharge. Lewis, however, has no recollection of any discussions he had with Peterson regarding Plaintiff from the fall of 2008 until January 2009 when Plaintiff was terminated. A reasonable jury could conclude that despite the unwritten "two to hire two to fire" policy, Lewis was not involved in the decision to terminate Plaintiff.[7] In fact, as long as Peterson had decision making authority (which Defendant has admitted in proposing its "two to hire, two to fire" policy), a reasonable jury could conclude that his ageist remark made during Plaintiff's termination was the motivation for Plaintiff's discharge.

Further, the record reflects other ageist comments made by Peterson during the last quarter of 2008 that further support Plaintiff's claim that Peterson believed he was getting too old to do his job.

In addition, the record reflects a disputed issue of material fact that the modification to Plaintiff's compensation structure was based on management's dissatisfaction with his performance. Plaintiff testified that he was told that because the automobile industry was in crisis, his modified compensation structure reflected all that Defendant could afford to pay at the time. Defendant disputes Plaintiff's assertion, indicating that the new compensation structure was instituted as an incentive for Plaintiff to improve his performance. The record reflects,

---

[7] Defendant argues that Peterson's statement cannot constitute direct evidence of discrimination because Peterson was a co-decisionmaker with owner Ron Lewis, and the record reflects absolutely no discriminatory animus on the part of Lewis. Consequently, argues Defendant, the discriminatory animus of one co-decisionmaker is insufficient to prove discrimination of the Defendant. Defendant relies on a Seventh Circuit case, and district court cases from the Northern District of Indiana and the Western District of Missouri. The Court is not bound by this precedent, and it has uncovered no case law from the Third Circuit Court of Appeals to support Defendant's proposition.

however, that neither Lewis nor Peterson informed Plaintiff that his performance was unsatisfactory. In fact, Plaintiff testified that Peterson did not discuss being dissatisfied with the performance of the dealership during daily calls to the dealership and weekly meetings. Instead, Peterson spoke to Plaintiff in terms of "how can we increase business and make things better?" Consequently, a reasonable jury could conclude that Plaintiff's modified compensation structure and Peterson's inquiries as to how can we make things better, reflected the Company's response to the collapse of the automobile business at this time, rather than any dissatisfaction with Plaintiff's performance. Therefore, a reasonable jury could conclude that Defendant was satisfied with Plaintiff's job performance, and that the "but for" cause of Plaintiff's termination was his age as indicated by Peterson at the time of Plaintiff's termination.

Because of the numerous issues of material fact in dispute as discussed above, the Court must deny Defendant's Motion for Summary Judgment.

CONCLUSION

In conclusion, genuine issues of material fact preclude summary judgment because a reasonable jury could conclude that Peterson directly communicated his illegal discriminatory motive at the time of Plaintiff's termination when he told Plaintiff that his age had caught up with him. In addition, genuine issues of material fact exist such that a reasonable jury could conclude that Peterson's age-based animus was the "but for" cause of Plaintiff's termination. Consequently, Defendant's Motion for Summary Judgment at ECF No. 23 will be denied. An appropriate order will follow.

March 19, 2012                                         s/Lisa Pupo Lenihan
                                                            LISA PUPO LENIHAN
                                                            CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record
    Via electronic filing